Ashok Ramani (SBN 200020)
Micah G. Block (SBN 270712)
Serge A. Voronov (SBN 298655)
Ian Hogg (SBN 313924)
Elaine M. Andersen (SBN 340247)
Natalie J. Stoecklein (SBN 350939)
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Tel:   (650) 752-2000
Fax:   (650) 752-2111
ashok.ramani@davispolk.com
micah.block@davispolk.com
serge.voronov@davispolk.com
ian.hogg@davispolk.com
elaine.andersen@davispolk.com
natalie.stoecklein@davispolk.com

*Counsel for Plaintiff
Magnolia Medical Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC.<br><br>　　　　　Plaintiff,<br><br>- against -<br><br>KURIN, INC.,<br><br>　　　　　Defendant. | Case No. 3:24-cv-00428-DMS-BJC<br><br>**OPPOSITION TO MOTION TO COMPEL INFRINGEMENT CONTENTIONS**<br><br>**REDACTED**<br><br>Judge:　　Hon. Dana M. Sabraw<br>Courtroom:　13A |

## INTRODUCTION

Magnolia finds Kurin's motion puzzling. The Patent Local Rules require that the patentholder put the alleged infringer on ***notice*** of how the accused device infringes. The required infringement contentions are notice pleadings, similar to a complaint, that must "**give notice** of [plaintiff's] ***theory*** of infringement" but need "not prove the particulars of its infringement case." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 2015 WL 12843185, at *3 (S.D. Cal. Aug. 26, 2015) (bold emphasis added). Consistent with that notice requirement, Magnolia's initial infringement contentions included over a thousand pages of charts that, for each limitation of each asserted claim, cited Kurin's website and other promotional materials and high-resolution photos from a teardown of Kurin's accused product. Those initial contentions amply put Kurin on notice of Magnolia's infringement theories. Indeed, despite its protestations, Kurin served nearly 13,000 pages of invalidity contentions on July 29, 2024. Had Kurin truly been unable to understand Magnolia's infringement theories, surely it would have sought court relief from that deadline. Kurin did not do that.

Although its initial contentions amply served their notice function, Magnolia amended its contentions to provide further detail because Kurin asked Magnolia to do so during meet and confers. That Kurin filed this motion anyway reveals its animating purpose—delay. Kurin switched counsel early in this case, and Kurin's new counsel apparently wishes to avoid the obligations to which their predecessors agreed. In May, the parties submitted a Joint Discovery Plan setting out their respective scheduling proposals. While the parties' proposals differed in certain respects, they agreed on two crucial points. ***First***, that the Patent Local Rules set the timing for Kurin's invalidity contentions—and subsequent patent-specific disclosures—based off of the date Magnolia served its infringement contentions.

And *second*, that Magnolia could serve its contentions any time. Lawyers may come and go, but the parties must abide by the agreements they make.

The Court should deny Kurin's motion.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The technology in this case relates to methods and devices for collecting blood samples with reduced contamination for use in the tests to diagnose blood infections like sepsis. Magnolia's pioneering, patented blood diversion technology solves long-running issues with traditional methods of blood culture testing which frequently allow contaminants, like skin fragments and microbes on a patient's skin, into blood samples, resulting in a high proportion of false-positive tests. Although remarkable for its innovation and value, the Magnolia inventions at issue are mechanical and something that non-scientists can understand.

Kurin's founder and CEO, Bob Rogers, while posing as an advisor to Magnolia, covertly stole Magnolia's innovative approach and used it to compete unlawfully against Magnolia. *See* Compl. ¶¶ 25-34. Days after Mr. Rogers met with Magnolia's co-founder and reviewed Magnolia's product prototype, Mr. Rogers started secretly using Magnolia's own technology to found a competing company. *Id.* at ¶ 29.

On May 28, 2024, the parties submitted a Joint Report and Discovery Plan Pursuant to Fed. R. Civ. P. 26(f) ("Joint Discovery Plan"). ECF No. 35. In the Joint Discovery Plan, the parties acknowledged that the Patent Local Rules dictated the applicable timing for all patent- and claim-construction-related disclosures. *See id.* at 4-6. Specifically, Kurin's proposal stated that "Patent Local Rule 3.3 ties Kurin's deadline for invalidity contentions to Magnolia's deadline for disclosure of asserted claims and infringement contentions," *id.* at 10, and noted that it

---

[1] This brief uses the following abbreviations throughout: "Bright Ex." refers to exhibits attached to the Declaration of C. Bright, filed on Aug. 21, 2024 as ECF No. 63-2; "Br." refers to Kurin's Brief in Support of its Motion to Compel, ECF No. 63-1.

"ultimately does not matter to Kurin when Magnolia serves its contentions; provided, however, that the deadline for Kurin's invalidity contentions should be pegged to the regular deadline under the rules." *Id.* at 4.

Later that day, and consistent with the Patent Local Rules,[2] Magnolia served its initial infringement contentions. *See* Bright Ex. 1. The initial contentions included 1,177 pages of claim charts that set out Magnolia's infringement theories on a limitation-by-limitation basis. A month later, Kurin sent Magnolia a letter alleging deficiencies in Magnolia's initial infringement contentions. Bright Ex. 2 at 1. After meeting and conferring regarding Kurin's objections, the parties submitted a Joint Discovery Statement ("JDS") to Magistrate Judge Ferraro. *See* Br. at 3. As pertinent to the instant motion, in the JDS, Kurin argued that:

> Magnolia must identify with specificity, *i.e.* **circling**, highlighting or color coding, or **indicating with an arrow**, "specifically where" within the Accused Product meets a specific physical limitation, including, but not limited to, "containment channel," "junction," "first state, "first fluid flow path," "second state," "second fluid flow path," "diverter," "reservoir," "selectively permeable blood barrier," "moveable plug," and "valve."

Bright Ex. 2 at 2 (emphasis added). The Court ordered Kurin to file a motion to compel, if necessary, by August 21, 2024. ECF No. 52.

While Magnolia has consistently maintained that its initial infringement contentions were more than adequate to satisfy Patent L.R. 3.1, *see* Bright Ex. 2 at 2-3, on August 17, 2024, to obviate any possible dispute, Magnolia served amended infringement contentions that included 1,741 pages of updated claim charts. Bright Ex. 4. In addition to citing to technical documents that Kurin had produced pursuant to Patent L.R. 3.4.a, the amended contentions added the requested "circles" and "arrows" about which Kurin had complained, and more.

---

[2] The Patent Local Rules require a party asserting infringement to serve infringement contentions "no later than" 14 days after the initial case management conference, but do not prohibit doing so earlier, Patent L.R. 3.1.

# ARGUMENT

Patent Local Rule 3.1 requires the plaintiff in a patent case to serve infringement contentions that include, *inter alia*, claim charts "identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3.1.c.[3] These charts must be "sufficiently specific to service their purpose: **give notice** of [plaintiff's] *theory* of infringement," but the Patent Local Rules do "not require the patentee to prove the particulars of its infringement case." *Presidio Components*, 2015 WL 12843185, at *3 (bold emphasis added). A plaintiff "need not provide concrete evidence" or claim constructions with its contentions, but rather must simply "'crystallize' its theory and 'identify how . . . products infringe with as much specificity as possible with the information currently available to it.'" *Id.* at *4 (quoting *Solannex, Inc. v. MiaSolé, Inc.*, 2013 WL 1701062, at *4 (N.D. Cal. Apr. 18, 2013)). Both Magnolia's initial and amended contentions do exactly that; clearly identifying, using the available evidence, the claims at issue, the Accused Products, and the structures in the Accused Products that meet the asserted claim limitations.

### A.   Magnolia's Initial Infringement Contentions Put Kurin on Notice of Magnolia's Infringement Theories

Magnolia's initial infringement contentions provided more than enough detail to satisfy the requirements of the Patent Local Rules and to put Kurin on notice of Magnolia's infringement theories. Using the information available to Magnolia at the time, including product teardowns and information and images from Kurin's publicly available marketing materials, *see, e.g.*, Bright Ex. 1 at Ex. A, 2-16, the initial contentions showed exactly where each element of each

---

[3] Kurin's repeated reference to another portion of Patent L.R. 3.1, which requires a plaintiff asserting that a claim warrants a means plus function construction under 35 U.S.C. §112(6), to also provide "the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function," Patent L.R. 3.1.c, has no bearing here, as Magnolia does not contend that any elements of any of the asserted claims are governed by 35 U.S.C. § 112(6).

asserted claim is found within the Accused Products. Ignoring the detail provided, Kurin claims Magnolia merely "pasted pictures of the entire product or portions of the device and simply recited the claim language, leaving Kurin to guess as to which physical portions of the Jet allegedly meet the physical limitations of the device." Br. at 4. The contentions themselves demonstrate otherwise.

First, Kurin argues, without any support, that Magnolia's initial contentions merely "past[ed] patent claim language into a chart without identifying which specific feature in the accused product meets each element in the claim language." Br. at 2. But as the examples cited in Kurin's own brief show, that is not the case. The initial contentions drew on a variety of sources, including detailed images of specific portions of the Accused Products drawn from product teardowns that were paired with clear descriptions of the particular features depicted. *See* Br. at 4-5 (noting that one such image was described as an "image of reverse side of exemplar Kurin PIV18 Jet device with scale in millimeters, depicting junction and portions of first and second fluid flow paths"). As shown in the following exemplary disclosures from the initial '002 Patent claim chart, where the initial contentions did recite claim language, it was paired with additional factual support—including images and quotations from Kurin's own marketing videos depicting the Accused Products in operation—that clearly connected the accused features of the Accused Products with the corresponding claim language:





Bright Ex. 1 at Ex. A, 14 (top left); 16 (top right); 18-19 (bottom left, cropped for clarity); 19-20 (bottom right, cropped for clarity). Nothing more was required. *See Presidio Components*, 2015 WL 12843185, at *4 (contentions that "closely mirror the claim language . . . are adequate if the cited factual support is specific and sufficient to put the accused party on notice").

Kurin's second claim, that "Magnolia pasted pictures of the entire product or portions of the device and . . . le[ft] Kurin to guess as to which physical portions of the Jet allegedly meet the physical limitations of the device," Br. at 4, is similarly unavailing. For each limitation of each Asserted Claim, Magnolia cited numerous images of the Accused Products, taken from a variety of angles, distances, and sources, that, along with the accompanying textual evidence and parentheticals, clearly explained what claim elements were depicted in a given image.

Pointing to a single image from only one of the five claim charts, Kurin claims it could not understand what portions of the Accused Products map onto the claimed "junction," "first fluid flow path," and "second fluid flow path" disclosed in certain claims of the '002 Patent because that single image is described as "depicting junction and portions of first and second fluid flow paths." Br. at 4-5

1  (quoting Bright Ex. 1 at Ex. A, 27). But as shown in the following table excerpting
2  relevant portions of the initial '002 Patent claim chart, additional images from the
3  same claim chart make clear that the first fluid flow path and second fluid flow
4  path are located on the obverse and reverse sides of the Accused Products,
5  respectively, while other images depict the portion of the Accused Products
6  corresponding to the claimed "junction" in isolation:






Bright Ex. 1 at Ex. A, 2-3 (top left, cropped and rotated for clarity); 4-5 (top right, same); 32 (bottom left); 19-20 (bottom right, cropped for clarity).

   Magnolia took the same approach in all of its infringement charts, specifically identifying particular structures in the Accused Products—which, as Kurin notes, "have numerous components," Br. at 2—where feasible. *See, e.g.,* Ex. 1 at Ex. C, 26-27 (cropped for clarity):



MAG-CAL_0009765 (image of the moveable plug after removal from the housing of exemplar Kurin PIV18 Jet device):

The level of detail provided in Magnolia's initial contentions was more than sufficient to identify the structures in the Accused Products that correspond to relevant claim language, and stands in stark contrast with the minimal disclosures contained in the contentions at issue in the cases Kurin cites in its motion.[4]

### B. Magnolia's Amended Infringement Contentions Added the Specific Annotations Kurin Requested

It beggars belief that Kurin complains after Magnolia did exactly what it asked. Rather than concede that the "circles" and "arrows" present throughout Magnolia's amended contentions address their previously stated concerns, Kurin now claims that the requested arrows and boxes are "vague" and fail to provide "***clear*** visual indicators" that "distinguishes those alleged features [depicted in the

---

[4] In *Uni-Splendor Corp. v. Remington Designs, LLC*, the patentee analyzed ***its own*** device in its infringement contentions and failed to identify an accused product from the defendant. 2017 WL 4786085, at *2 (C.D. Cal. Aug. 10, 2017). In *Sung v. Shinhan Diamond America, Inc.*, the patentee analyzed only one of forty accused products in its contentions and did not address each element of each asserted claim. 2015 WL 12681308, at *3-4 (C.D. Cal. Feb. 25, 2015). In *Ameranth, Inc. v. Pizza Hut, Inc.*, the patentee agreed that it did not explain "how" the accused systems practice the claimed elements and further failed to cite any of the source code to which it had access for "several months" prior to serving its contentions. 2013 WL 3894880, at *8-9 (S.D. Cal. July 26, 2013). And in *Renesas Technology Corp. v. Nanya Technology Corp.*, the court concluded that the contentions at issue were "adequate, as they go beyond restating the claim language and map the claims onto focused schematics for each patent," and merely ordered the patentee to amend to identify the location of certain claimed node structures, which were not identified in the initial contentions. 2004 WL 2600466, at *6 (N.D. Cal. Nov. 10, 2004); *see* Nanya's Mot. to Strike Preliminary Infringement Contentions at 20, Case No. 03-cv-5709, ECF No. 30.

Case 3:24-cv-00428-DMS-BJC   Document 66   Filed 08/28/24   PageID.11362   Page 10 of 12

annotations] from others." Br. at 2, 5-7. But the example about which Kurin complains does just that, consistently identifying where the "first fluid flow path" is found in the Accused Products. Kurin complains that the images do not identify "exactly where the first fluid flow path . . . begins or ends . . .," but as depicted below, the arrows in the pictures unambiguously show a beginning and end:

 

Bright Ex. 4 at Ex. A, 3 (left side, cropped and rotated); 6 (right side).

What is more, Kurin's insistence that Magnolia use its infringement contentions to identify the specific location where a certain "pressure differential is built" and to "distinguish" claim terms from one another, Br. at 5-7, amount to requests for early claim constructions and expert opinions. This is improper. Initial infringement contentions are not a "forum for litigation of the substantive issues," and patentees are not required to "produce evidence of infringement or to set forth ironclad and irrefutable claim constructions." *Network Caching Tech. LLC v. Novell, Inc.*, 2003 WL 21699799, at *4-5 (N.D. Cal. Mar. 21, 2003) (analyzing analogous N.D. Cal. patent local rule); *see also Evolution Concepts, Inc. v. Cross Eng'g, LLC*, 2019 WL 13149923, at *1 (S.D. Cal. Apr. 8, 2019) (Sabraw, J.). The parties are still discussing claim-construction positions and Kurin has yet to produce any documents or product samples in response to Magnolia's discovery requests. Until Kurin engages in discovery and provides the product samples it has committed to producing, Magnolia cannot conduct the flow tests and other analysis needed to further refine its contentions to provide the additional detail. *See Renesas*

*Tech. Corp. v. Nanya Tech. Corp.*, 2004 WL 2600466, at *5 (N.D. Cal. Nov. 10, 2004) (rejecting challenge to contentions where patentee "alleges it has not yet received the discovery necessary to run the voltage tests properly.").

### C. The Case Schedule Should Adhere to the Patent Local Rules

Nothing in Kurin's motion provides any justification for delaying discovery or departing from the disclosure schedule set out by the Patent Local Rules. Both Magnolia's initial and amended infringement contentions adequately disclosed Magnolia's infringement theories in compliance with Patent L.R. 3.1. Neither set of disclosures provides any basis for delay, and, tellingly, Kurin does not cite any authority in support of its requested schedule relief. Indeed, even in cases where courts have found infringement contentions to be deficient, they still declined to alter or "delay the pre-*Markman* schedule" under the Patent Local Rules. *See Gaines Mfg. v. Hillman Grp.*, 2007 WL 9776736, at *4 (S.D. Cal. Feb. 20, 2007).

The Court should take a similar approach here and reject Kurin's attempts to relitigate the case schedule submitted in May. Kurin agreed in the Joint Discovery Plan that the Patent Local Rules govern pre-*Markman* disclosures and that those deadlines would begin to run when Magnolia served its infringement contentions. *Supra* Background Section at 2-3. Since Magnolia served its initial contentions, the parties have exchanged the subsequent rounds of disclosures consistent with the Patent Local Rules and Magnolia's proposed schedule. Unable to identify any actual deficiency in Magnolia's contentions, and having already acquiesced to the schedule mandated by the Patent Local Rules, Kurin cannot provide any justification for an alternative approach. The Court should deny Kurin's motion and enter a schedule consistent with Magnolia's proposal set out in ECF No. 35.

### CONCLUSION

For the foregoing reasons, Magnolia respectfully requests that the Court deny Kurin's Motion to Compel.

| | | |
|---|---|---|
| Dated: August 28, 2024 | | Respectfully submitted, |

/s/ Ian Hogg
DAVIS POLK & WARDWELL LLP
Ashok Ramani (SBN 200020)
Micah G. Block (SBN 270712)
Serge A. Voronov (SBN 298655)
Ian Hogg (SBN 313924)
Elaine M. Andersen (SBN 340247)
Natalie J. Stoecklein (SBN 350939)
1600 El Camino Real
Menlo Park, California 94025
Tel:  (650) 752-2000
ashok.ramani@davispolk.com
micah.block@davispolk.com
serge.voronov@davispolk.com
ian.hogg@davispolk.com
elaine.andersen@davispolk.com
natalie.stoecklein@davispolk.com

*Counsel for Plaintiff*
*Magnolia Medical Technologies, Inc.*